UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

Jane Best-Simpson,

                                                    Plaintiff,

                            -against-

NEW YORK ORGAN DONOR NETWORK, ELAINE
BERG, *Individually and in her Professional Capacity*,
MICHELE CLAYTON LUCAS, *Individually and in her
Professional Capacity*, Julia Rivera, *Individually and in her
Professional Capacity* and Martin Woolf *Individually and
in his Professional Capacity*, ROBERT GOSSEEN,
GALLAGHER, GOSSEEN, FALLER & CROWLEY,
THE NEW YORK CITY COMMISSION ON HUMAN
RIGHTS, PATRICIA GATLING, *Individually and in her
Professional Capacity*; MR. RAYMOND WAYNE,
*Individually and in his Professional Capacity*; MS.
LANNY ALEXANDER, *Individually and in her
Professional Capacity* and MR. CLIFF MULQUEEN,
*Individually and in his Professional Capacity*,

                                                    Defendants.

--------------------------------------------------------------------- x

07 CV 2683 (BSJ)(AJP)

*Pro Se* Case

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants the New York City Commission On Human Rights ("HRC"), Patricia
Gatling, individually and in her professional capacity; Raymond Wayne, individually and in his
professional capacity; Lanny Alexander, individually and in her professional capacity and Cliff
Mulqueen, individually and in his professional capacity (hereafter referred to collectively as the
"HRC Defendants"), respectfully submit this memorandum of law in support of their motion
pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b) to dismiss the complaint of plaintiff
Jane Best-Simpson for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

Plaintiff Jane Best-Simpson's disappointment over an HRC finding of no probable cause to believe that she was discriminated against by her former employer leads her to sue HRC and its staff.    Like a snowball gathering size as it plunges downhill, Plaintiff augmented her original claim for alleged disability and race discrimination against her former employer, the New York Organ Donor Network ("NYODN"), by first adding claims against NYODN's attorneys and then still more claims against nearly every individual at the HRC that played a role in her case, and HRC itself, suggesting that after this next, federal round, the City's attorneys and this Court may require counsel.

Plaintiff's claims against the HRC Defendants, for defamation, intentional infliction of emotional distress, fraud and discrimination on the basis of race and disability all must be dismissed.    First, the bulk of plaintiff's federal claims, brought under seven separate federal statutes, rest on allegations of improper investigation of her claims, or  on  HRC's determination of no probable cause, and the HRC Defendants accordingly have absolute immunity against such claims.    Plaintiff's 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) claims fail, not only because the HRC Defendants have absolute, or at least qualified, immunity from those claims, but, more fundamentally, because plaintiff's allegations do not constitute a deprivation of any of her rights where she never appealed the HRC's decision to a New York State court.

Plaintiff's § 1983, § 1985(3) and Title VI claims fail as insufficiently alleged where they rest entirely on conclusory statements and speculation.    Plaintiff's Title VI, Americans with Disabilities Act ("ADA") and Rehabilitation Act claims should also be dismissed as against the individual HRC Defendants because the statutes do not provide for individual liability.    Finally, plaintiff's ADA and Rehabilitation Act claims fail because she has

not adequately alleged that the HRC Defendants failed to reasonably accommodate her disability or that the HRC took an adverse decision against her because of her disability.

Plaintiff's tort claims should also be dismissed because plaintiff filed her notice of claim more than ninety days after the occurrence of the alleged events that give rise to her state tort claims. The HRC Defendants are also protected by an absolute privilege against plaintiff's intentional infliction of emotional distress ("IIED") and defamation claims. Finally, plaintiff fails to adequately allege the requisite elements of each of her tort claims.

### STATEMENT OF ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows as to the HRC Defendants:

Plaintiff filed a charge of discrimination against her employer, NYODN, with the HRC on April 14, 2004 and was terminated by NYODN on April 19, 2004.[1] An investigator at the HRC drafted a complaint with which plaintiff was dissatisfied. The investigator drafted a revised complaint, assured plaintiff it was adequate and advised plaintiff to verify it and return it to the HRC. (Complaint of Jane Best-Simpson dated February 22, 2007 ("Complaint"), at ¶¶ 117-133).[2]

Plaintiff allegedly returned the verified complaint to HRC on September 14, 2004, but did not inquire as to its receipt by HRC until April 19, 2005, when she appeared at the HRC to check on the status of her case. She alleges that the HRC investigator told her that her complaint would be deemed received as of April 19, 2005. (Complaint ¶¶ 134-138).

---

[1] Plaintiff indicates alternately that she filed the charge on April 14, 2004 and on April 14, 2003, but based on the remaining allegations of the complaint, 2004 appears to be the correct year (Complaint ¶¶ 116 – 117).

[2] Plaintiff's understanding of the proper contents of a complaint is reflected in the 827 paragraph, 281 page complaint filed in this action.

Plaintiff was subsequently informed that her case was dismissed as untimely. (Id. ¶¶ 139-146). Plaintiff obtained representation, appealed the dismissal to Commissioner Gatling and in August 2005 her complaint was reinstated by the HRC. (Id. ¶¶ 146-147).

HRC Investigator Raymond Wayne took over the investigation of plaintiffs' claims and plaintiff expresses her dissatisfaction with the course of that investigation. (Id. ¶¶ 150-166). Plaintiff was served with NYODN's Respondent's Statement on or about December 20, 2005 and was informed that she would need to reply by January 20, 2006. On or about May 12, 2006, the Law Enforcement Bureau of the HRC issued a determination and order finding no probable cause that plaintiff had been discriminated against by her employer. (Id. ¶¶ 178-181).

Plaintiff appealed the no probable cause decision of the Law Enforcement Bureau to Commissioner Gatling. She alleges that HRC denied her request for an extension of time to submit certain documentation during the appeal while granting a comparable request for NYODN. On or about October 4, 2006, plaintiff received a decision of HRC affirming the Law Enforcement Bureau's determination of no probable cause and informing her that she could appeal her decision to State Supreme Court. (Id. ¶¶ 182-188). Plaintiff did not appeal the decision to a New York State court. (Id. ¶ 189).

Plaintiff sought review of HRC's decision by the Equal Employment Opportunity Commission ("EEOC") and on November 28, 2006, she received a 'Dismissal and Notice of Rights' letter in which the EEOC adopted the findings of HRC and informed plaintiff of her right to sue. (Id. ¶¶ 208, 221).

Plaintiff alleges that HRC violated her due process rights because, despite the documentation she provided to HRC evidencing her difficulties at NYODN, HRC failed to fully investigate her claim and based its decision on evidence submitted by the NYODN that plaintiff

claims is false. (Id. ¶¶ 11, 35-41, 43-48, 752-753, 759). Plaintiff also alleges that HRC's determination of no probable cause was one-sided and defamed her. (Id. ¶¶ 45, 49, 756-757).

Plaintiff also alleges that the NYODN defendants and HRC Defendants are politically connected and acted in concert with one another to deprive plaintiff of her civil rights and that HRC has a policy and practice of engaging in such conspiracies. (Id. ¶¶ 111, 114-116, 192, 708, 710-741, 758, 760). She alleges, on information and belief, that the HRC Defendants have been involved in some (unspecified) cases in which an HRC decision of no probable cause has been reversed and that in other (unspecified) instances, legitimate and valid claims of discrimination brought by poor African-Americans have been dismissed by the HRC. (Id. ¶¶ 190, 741-744).

Finally, plaintiff makes allegations, for which she admits she has no basis, that several personal relationships between individuals associated with NYODN and individuals associated with the City might have played a role in the HRC's decision (Id. ¶¶ 763-787), and that such factors as racism, politics, and bribery might possibly have affected HRC's decision and that the HRC Defendants subjected plaintiff and unnamed other African-Americans to acts of racial discrimination. (Id. ¶¶ 217, 226, 741).

Based on the above, Plaintiff brings claims against the HRC Defendants for (1) Intentional Infliction of Emotional Distress, (2) Defamation, (3) Fraud, (4) Violations of the Civil Rights Act of 1964, 42 U.S.C.A. Section 2000d (Title VI), (5) a Violation of Section 504 of the Rehabilitation Act of 1973, (6) Violation of 42 U.S.C.A. Section 1983, (7) Violation of 42 U.S.C.A. Section 1985(3), and (8) Violations of the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq. (Id. ¶¶ 789 – 827). See also Letter dated October 24, 2007 to the Court

from Jane Best-Simpson (indicating that she did not intend to bring claims under Title VII and §

1981 against the HRC Defendants).

## ARGUMENT

### The 12(b)(6) Motion to Dismiss Standard

When considering a 12(b)(6) motion to dismiss, a court "must accept as true the

factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff."

Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted).  Where

a plaintiff is proceeding *pro se*, the court must read the allegations liberally and construe them as

raising the strongest arguments that they suggest.  McEachin v. McGuinnis, 357 F.3d 197, 200

(2d Cir. 2004).  Although a complaint does not need detailed factual allegations, a "plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell

Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007).  "Factual allegations must be

enough to raise a right to relief above the speculative level."  Id. at 1965.  A plaintiff must allege

"enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  Furthermore,

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss."  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d

Cir. 2002).

## POINT I

### THE HRC DEFENDANTS ARE PROTECTED FROM PLAINTIFF'S § 1983, § 1985(3), ADA AND STATE TORT CLAIMS BY ABSOLUTE IMMUNITY

Plaintiff's federal claims and state tort claims revolve exclusively around allegations that the HRC Defendants did not properly pursue her claims of discrimination and ultimately issued a determination of no probable cause. Such claims are simply not cognizable because the HRC Defendants are protected by absolute immunity for their judicial or quasi-judicial actions. *See* Schloss v. Bouse, 876 F.2d 287 (2d Cir. 1989) (assistant district attorney has absolute immunity for claimed failure to prosecute); Marczeski v. Handy, 213 F. Supp. 2d 135, 141 (D. Conn. 2002) (absolute immunity for state prosecutor against claim of failure to investigate); Woolfolk v. Thomas, 725 F. Supp. 1281, 1283 (N.D.N.Y. 1989) (absolute immunity for district attorney against claim of "unwillingness to acquire evidence" against police officer); White v. Martin, 26 F. Supp. 2d 385 (D. Conn. 1998), aff'd, 1999 U.S. App. LEXIS 35319 (summary order) (holding that state commission on human rights' finding of no reasonable cause and decision not to prosecute "are clearly quasi-judicial functions entitled to absolute immunity" from § 1983 claims); Cohen v. Brookwood Childcare Agency's Employees, No. 01-CV-162 (FB), 2001 U.S. Dist. LEXIS 21303 (E.D.N.Y. December 14, 2001) (state administrative law judge has absolute immunity against claims that she disregarded plaintiff's evidence and nodded in agreement with racially damaging statements at administrative hearing).[3]

Indeed, the essence of plaintiff's claims against the HRC Defendants revolve around her allegations that HRC did not request all of the documents she recommended they request from NYODN and that HRC reached the wrong decision because it did not accept her version of the facts. As stated in Woolfolk, "the decision *not* to investigate is 'sufficiently

---

[3] That the HRC functions are quasi-judicial and quasi-prosecutorial does not bear on the analysis. *See* Spear v. Town of West Hartford, 954 F.2d 63 (2d Cir.), cert. denied, 506 U.S. 819, 113 S. Ct. 66 (1992).

closely related' to the decision *not* to prosecute so as to qualify [the] decision for absolute immunity." 725 F. Supp. at 1283. Consequently, the HRC Defendants are entitled to absolute immunity from plaintiff's claims under § 1983, § 1985(3), ADA and her state law claims. See Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir. 1978) (applying absolute immunity to conspiracy claim under § 1985); Harms v. Riordan-Bellizi, 223 A.D. 2d 624, 625 (2d Dep't 1996) (hearing officer entitled to absolute immunity from defamation and injurious falsehood claims); In re NYSE Specialists Sec. Litig., 503 F.3d 89, 2007 U.S. App. LEXIS 22212, at *34 (2d Cir. 2007) (refusing to apply exception to absolute immunity doctrine for claims of fraud); Duvall v. County of Kitsnap, 260 F.3d 1124, 1133 (9th Cir. 2001) (state court judge entitled to immunity from reasonable accommodation claim under ADA for denial of request for videotext display).

### POINT II

**PLAINTIFF CANNOT ESTABLISH ANY CLAIM FOR LIABILITY UNDER § 1983 AS SHE HAS NOT ALLEGED THE REQUISITE DEPRIVATION OF HER RIGHTS FOR A DUE PROCESS VIOLATION NOR HAS SHE SUFFICIENTLY ALLEGED DISCRIMINATION ON THE BASIS OF RACE**

**A.    Plaintiff's Allegations do not State a Deprivation of her Constitutional Rights**

Rights of action under anti-discrimination laws create constitutionally protected interests. Logan v. Zimmerman Brush Co., 455 U.S. 422, 429-31, 102 S. Ct. 1148, 1154-55 (1982). However, a complainants' protected interests are in the cause of action itself, rather than "the forum in which they elect to pursue that cause of action." N.Y. Nat'l Org. for Women v. Pataki, 261 F.3d 156, 163-64 (2d Cir. 2001). Where a defendant's actions do not foreclose adjudicatory procedures for vindication of plaintiff's claims, there is no cognizable deprivation. Sosna v. Iowa, 419 U.S. 393, 410, 95 S. Ct. 553, 563 (1975); Nat'l Org. for Women, 261 F.3d at 173-76 (Meskill, J., concurring), citing Polk v. Kramarsky, 711 F.2d 505 (2d Cir. 1983), see also

Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 321-322 (M.D. Pa. 2004) ("until [the adjudicatory] procedures have been foreclosed the cause of action remains viable and no deprivation has occurred."); Reyes v. Erickson, 238 F. Supp. 2d 632, 635-636 (S.D.N.Y. 2003) (dismissing § 1983 claim where plaintiffs failed to follow Article 78 procedure for seeking review of decision of Housing and Preservation Department).[4]

In order to survive a motion to dismiss, "a due process claim under section 1983 must allege the deprivation of a constitutional right." Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002). Accordingly, Plaintiff's allegations are insufficient to establish a violation of due process under § 1983 against any of the HRC Defendants because plaintiff alleges that she did not appeal HRC's determination and order to a New York State court, despite having been informed by HRC of her right to so appeal. (Complaint ¶¶ 188-189). As a consequence, plaintiff cannot now state a claim that she was deprived of any rights by the HRC. See Martin v. City of New York, 1997 U.S. App. LEXIS 3334, at *7 (2d Cir. 1997) (holding that plaintiff could not state claim for deprivation of rights where she withdrew her complaint from the Human Rights Commission); Pappas, 331 F. Supp. 2d at 322 (dismissing plaintiff's due process claim based on deprivation of his right to retirement payments because he did not avail himself of the state adjudicatory procedures and there was no evidence the state prevented him from doing so); In re Pan American World Airways, Inc. v. N.Y.S. Human Rights Appeal Board, 61 N.Y.2d 542, 548-49, 475 N.Y.S.2d 256, 258-59 (1984) (no due process violation as State

---

[4] To the extent that plaintiff alleges that the HRC Defendants violated her, or other claimants', right to due process by issuing a determination of no probable cause without a hearing, the United States Supreme Court has held that such a claim is without merit. See Kremer v. Chemical Const. Corp., 456 U.S. 461, 484-485 (1982); see also Long v. District of Columbia, 3 F. Supp. 2d 1477 (D. D.C. 1998) (holding that due process is met where complainant has opportunity to present evidence and to have adverse rulings reviewed).

Division's dismissal for administrative convenience did not finally deprive complainants of their interests under the Human Rights Law since they could proceed on their claims in State court).

Indeed, all of plaintiff's claims and rights of action against her former employer defendants are pending in this Court; accordingly, her due process claims under § 1983 against the HRC Defendants should be dismissed. See Baba v. Warren Mgmt. Consultants, Inc., 882 F. Supp. 339 (S.D.N.Y. 1995) (finding no cause of action against EEOC or State Division of Human Rights; remedy for an insufficient investigation by it is to bring suit in federal court directly against employer); Francis-Sobel v. Univ. of Maine, 597 F.2d 15, 17 (1st Cir. 1979) (despite alleged "assistance rendered to appellant by the EEOC [that] was worse than useless," court could find no federally cognizable claim as the interests themselves had not been lost). As plaintiff has not alleged that she was deprived of any rights, plaintiff's due process claims under § 1983 against the HRC Defendants should be dismissed.

Notably, even if absolute immunity does not apply to the alleged actions of the HRC defendants, based on the discussion above, they are entitled to qualified immunity from plaintiff's due process claims as their alleged conduct did not violate any clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982); see also Anderson v. Creighton, 483 U.S. 635, 644, 646 (1987) (qualified immunity applies even where conduct did violate clearly established rights if it was objectively reasonable for the defendants to believe that it did not). The HRC serves important functions in enforcing the anti-discrimination laws and its investigators should be permitted "to perform their duties without the threat of individual liability for damages." See White v. Martin, 26 F. Supp. 2d at 390. As plaintiff does not allege that any of the HRC defendants prevented her from appealing HRC's decision, or that the HRC Defendants denied her a clearly established right to an extension of time (see discussion below),

the conduct plaintiff does attribute to the HRC Defendants does not constitute a violation of any

clearly established constitutional right.

**B.      Plaintiff's Complaint Does Not Allege Sufficient Factual Support to State a Cause of Action for Race-based Discrimination in violation of § 1983**

        The Second Circuit has stated that the Supreme Court's decision in Twombly

requires that a plaintiff must satisfy a "flexible 'plausibility standard' which obliges a pleader to

amplify a claim with some factual allegations in those contexts where such amplification is

needed to render the claim plausible."    Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007).

Plaintiff's complaint fails to meet this standard for two reasons.

        Aside from plaintiff's litany of conclusory allegations that she and others have

been discriminated against by HRC, none of plaintiff's allegations that are remotely factual

provide evidence that discrimination or a conspiracy occurred.  To the contrary, her allegations

that her charge of discrimination was reviewed and denied by HRC, that individual HRC

Defendants had conversations with attorneys representing NYODN, that HRC has in the past

dismissed claims that she alleges have merit, and finally that HRC has had previous decisions

overturned by state courts, reflect nothing more than the normal administration and review of

claims by HRC as envisioned by the New York City Administrative Code.  See New York City

Administrative Code §§ 8-113, 8-123.   Her allegations are analogous to those presented in

Twombly, where the Supreme Court found in the anti-trust context that allegations that two

companies behaved similarly, without more, did not suffice to survive a motion to dismiss

because they were not on their own suggestive of conspiracy.  See Twombly, 127 S. Ct. at 1972,

1974.

        Second,  this case implicates two of the concerns discussed in Iqbal  as potentially

warranting a heightened pleading standard: i) absolute, or at least qualified immunity, which "is

essential to the ability of government officials to carry out their public roles effectively without fear of undue harassment or litigation," and ii) generalized allegations of supervisory involvement, which could lead to the very broad ranging discovery that qualified immunity is intended to prevent. Iqbal, 490 F.3d at 158.

Thus, the flexible plausibility standard enunciated in Twombly applies to plaintiff's claims that the HRC discriminated against her on the basis of race. As plaintiff does nothing more than allege in the most conclusory fashion that the HRC Defendants discriminated against her on the basis of race, and none of her allegations offer factual support for these claims, her claim of racial discrimination in violation of § 1983 should be dismissed. See Lomnicki v. Cardinal McCloskey Servs., No. 04-CV-4548 (KMK), 2007 U.S. Dist. LEXIS 54828, at *24 (S.D.N.Y. 2007) (dismissing racial discrimination claim where there were no facts alleged giving rise to a plausible inference of discriminatory intent); Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994) (racial discrimination plaintiff must do more than make conclusory assertions).

Furthermore, even if plaintiff's factually unsupported assertions, made on information and belief, that the HRC Defendants were involved in some unnamed HRC decision concerning an African American claimant that was reversed by a state court and that many cases filed by poor African Americans are dismissed regardless of validity, were true, they would not suffice to make a claim for discrimination. Plaintiff completely fails to allege that claimants of other races are treated differently. (Complaint ¶¶ 190, 741). Instead, she alleges that the dismissals occurred because the HRC has connections with "favored lawyers and politically connected employers." (Complaint ¶¶ 711, 729, 739). These allegations do not state a claim for discrimination on the basis of race. See Caidor v. Onondaga County, No. 5:03-CV-00031 (NPM), 2006 U.S. Dist. LEXIS 64664, at *34-35 (N.D.N.Y. 2006) (for equal protection violation

claim under § 1983, plaintiff must establish that defendant treated him differently compared with others similarly situated with no rational basis or based on an impermissible consideration such as race) (citing Bizarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005)).

## POINT III

### PLAINTIFF CANNOT ESTABLISH A CLAIM FOR CONSPIRACY UNDER § 1985(3)

Plaintiff's § 1985(3) claim of an alleged conspiracy between defendants to deny plaintiff her civil rights also fails on multiple grounds.  The four elements of a § 1985(3) conspiracy claim are: a conspiracy; for the purpose of depriving any person or class of persons of rights; an act in furtherance of the conspiracy; and a deprivation of rights.  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  Further, the conspiracy must be motivated by a racial or otherwise class-based invidious discriminatory animus and there must be a factual basis supporting a meeting of the minds.  Id. at 1088; Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003).  "A claim of conspiracy to violate civil rights requires a detailed fact pleading to withstand a motion to dismiss." Aikman v. County of Westchester, 491 F. Supp. 2d 374, 383 (S.D.N.Y. 2007) (citing Angola v. Civiletti, 666 F.2d 1, 4 (2d Cir. 1981)); see also Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (vague claims of conspiracy supported by no probative facts should be dismissed).

First, as argued above, plaintiff's allegations do not demonstrate the requisite deprivation of any of her rights.

Second, to the extent that plaintiff alleges that the defendants conspired to deprive her of rights granted under the ADA, such rights cannot serve as a basis for a § 1985(3) claim. Taggart v. Moody's Serv., 06 Civ. 3388 (PKC), 2007 U.S. Dist. LEXIS 52765 (S.D.N.Y. July 17, 2007).

Third, plaintiff's compilation of vague and conclusory allegations is insufficient to state a claim for conspiracy under §1985(3), particularly as argued above, under the Twombly pleading standard. Indeed, in numerous analogous situations, courts have dismissed claims for conspiracy where the plaintiff essentially takes her own experience in a public adjudicatory process and then asserts claims of conspiracy based solely on the fact that her claims were denied. See Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir. 1964) (holding that civil rights conspiracy plaintiff must allege with at least some degree of particularity the overt acts by defendants in furtherance of the claimed conspiracy); Lorett v. Brody & Fabiani, 93 Civ. 3065 (LMM), 1993 U.S. Dist LEXIS 10246, at * 17 (S.D.N.Y. 1993) (holding that claims couched in conclusory terms fail to demonstrate the requisite discriminatory animus behind the conspirators' actions). "A civil rights conspiracy is not stated by simply reciting the history of one's experiences in the state administrative and judicial systems and concluding with a general allegation that everyone who participated in the process leading to a decision adverse to plaintiff is a member of a conspiracy." Devany v. County of Nassau, No. CV 88-0657 (RR), 1989 U.S. Dist. LEXIS 2000, at *22 (E.D.N.Y.1989) (internal quotation marks and citations omitted) (dismissing § 1985(3) claim by pro se plaintiff against Commissioner of State Division of Human Rights and plaintiff's employer as insufficiently alleged).

In essence, plaintiff claims that HRC failed to conduct a fair investigation of her claim and that its decision finding no probable cause was based on the "false submissions" of her employer. (Complaint ¶¶ 11, 35-41, 43-48, 752-753). From these allegations, she speculates that this result must be because the HRC routinely works with politically connected employers to deny the discrimination claims of African-American claimants. Id. ¶¶ 710-741. However, plaintiff admits at various points in her complaint that she has no basis on which to substantiate

her claims that personal connections between various city officials and individuals associated with her former employer played a role in HRC's determination of no probable cause. Id. ¶¶ 764, 788. Nowhere in her complaint does plaintiff point to any specific acts taken by any of the HRC Defendants that could reasonably be attributed to a conspiracy between the HRC and the NYODN to discriminate against her on the basis of race. She does allege that her former employer submitted documents and arguments she considers to be erroneous, but as noted by the Second Circuit, allegations reflecting "the action of several interested parties to an [administrative] proceeding . . . coupled with the normal administrative processes of adjudication and appeal" are not sufficient to state a claim for conspiracy under § 1985(3). Powell, 327 F.2d at 137. As a consequence, her entire conspiracy claim rests on baseless allegations and conclusory statements and should therefore, be dismissed.

Furthermore, as argued above, even if absolute immunity does not apply to plaintiff's conspiracy claims under § 1985(3), the HRC Defendants are entitled to qualified immunity. They could not have reasonably known that their actions, as alleged by plaintiff, constituted a constitutional violation of plaintiff's § 1985(3) rights where she does not allege that they prevented her from appealing the HRC's decision to a state court.

**POINT IV**

**PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE VI**

To state a claim under Title VI of the Civil Rights Act of 1964, a plaintiff must demonstrate that: (1) the entity involved engaged in racial or national origin discrimination; (2) the entity involved received federal financial aid; and (3) plaintiff was an entitled beneficiary of the program or activity receiving aid. Babiker v. Ross Univ. Sch. of Med., No. 98 CIV 1429 (THK), 2000 U.S. Dist. LEXIS 6921 (S.D.N.Y. May 19, 2000); See Tolbert v. Queens Coll., 242

F.3d 58, 69 (2d Cir. 2001).

As an initial matter, Title VI does not provide for a claim against individuals and therefore plaintiff's Title VI claim against the individual HRC Defendants should be dismissed. Kelly v. Rice, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005).

As for the HRC, plaintiff fails to make sufficient allegations to state a claim under Title VI. First, she does not allege that HRC is a recipient of federal funding. See Johnson v. County of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (holding that plaintiff must allege defendant is a recipient of federal funding as well as allege a logical nexus between the funding and the practice alleged to be discriminatory in order to state a claim under Title VI). More importantly, she fails to set forth any allegations of specific facts indicating that she was subjected to racial discrimination by the HRC Defendants. See Boykin v. Key Corp., 03-CV-944S, 2005 U.S. Dist. LEXIS 5546, at *12-13, *25-26 (W.D.N.Y. March 28, 2005) (dismissing Title VI claims against New York State Human Rights Division noting that there were no factual allegations whatsoever supporting the plaintiff's conclusory allegations).

In Boykin, the court dismissed a Title VI claim against the state human rights division as insufficient where plaintiff's complaint alleged in conclusory fashion that the division failed to investigate her claim properly because of her race and that the division processed complaints based on sex more favorably than those based on race. Id. The allegations in Boykin are little different than those presented here: plaintiff asserts in conclusory fashion that the HRC Defendants subjected her to acts of racial discrimination and that HRC routinely fails to properly investigate claims brought by African-American claimants, but she offers no factual allegations whatsoever to support these assertions. As in Boykin, these conclusory and speculative allegations are insufficient to plead the requisite intentional discrimination on the basis of

16

membership in a protected class.  See also Seabrook v. City of New York, 05 Civ. 10760, 2007

U.S. Dist. LEXIS 68087 (RJH), at *27-28 (S.D.N.Y. Sept. 14, 2007) (dismissing Title VI claim

asserting conclusory allegations that defendant housing agency discriminated against plaintiffs

on the basis of national origin) (citing Martin v. New York State Dep't of Mental Hygiene, 588

F.2d 371, 372 (2d Cir. 1978)).

### POINT V

**PLAINTIFF FAILS TO STATE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT**

To establish a violation of Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794, plaintiff must show (1) that she has a disability for purposes of the Rehabilitation

Act, (2) that she was 'otherwise qualified' for the benefit that has been denied; (3) that she has

been denied the benefit 'solely by reason' of her disability and (4) that the benefit is part of a

program receiving federal financial assistance.  Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.

1998).

For a violation of Title II of the ADA, 42 U.S.C.S. § 12132, a plaintiff must

establish (1) she is a qualified individual with a disability; (2) she is being excluded from

participation in, or being denied the benefits of some service, program or activity by reason of

his or her disability; and (3) the entity which provides the service is a public entity.  See id.;

Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y. 2003).

To establish discrimination under the ADA, a plaintiff has three available

theories: (1) intentional discrimination, (2) disparate impact, and (3) failure to make a reasonable

accommodation.  Tsombanidis v. W. Haven Fire Dep't,  352 F.3d 565, 573 (2d Cir. 2003).  For

the purposes of a reasonable accommodation claim, the elements of a prima facie case for suits

brought either under Section 504 and the ADA are the same. Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999).

As an initial matter, Plaintiff's claims under the ADA and the Rehabilitation Act must be dismissed as to the individual HRC Defendants because these statutes do not provide for liability against individuals, either in a personal or official capacity. Atkins, 251 F. Supp. 2d at 1233; Harris v. Mills, 478 F. Supp. 2d 544, 547 (S.D.N.Y. 2007).

Plaintiff's ADA and Rehabilitation Act claims appear to be based on an alleged failure to provide a reasonable accommodation.[5]  Plaintiff's allegations, however, do not sufficiently state a claim under the ADA or the Rehabilitation Act based on a reasonable accommodation theory.  The only possible basis for this claim in her complaint is her allegation that HRC denied her request for a two week extension during her appeal of the Law Enforcement Bureau's finding of no probable cause.  Despite this allegation, plaintiff does not allege the manner in which this denial prevented her from obtaining a benefit or service provided by the HRC.  She does not allege that the denial prevented HRC from investigating her claim or that the denial in some way affected the Commission's affirmance of HRC's finding of no probable cause.  To the contrary, she alleges throughout her complaint that she was able to submit documentation to the HRC, that the Commission drafted a complaint for her, that both parties to the proceedings submitted statements of their positions, and that HRC issued a determination of no probable cause which after a nearly three month period of review, was affirmed by the

---

[5] Any claim that plaintiff may have under the ADA for money damages must be dismissed because plaintiff has not alleged intentional discrimination by reason of disability. See Memmer v. Marin County Courts, 169 F.3d 630, 633 (9th Cir. 1999).  If plaintiff intends to bring intentional discrimination or disparate impact claims against HRC under the ADA, such claims would be without merit. See Doe, 148 F. 3d at 82 (noting that such claims against an agency whose purpose is to assist the disabled would be "beyond tenuous").

Commissioner. (Complaint ¶¶ 11, 118-133, 167-188). Accordingly, even if true, plaintiff's allegations do not demonstrate that she was denied access to the services of HRC. See Alexander v. Choate, 469 U.S. 287, 301 (1985) (Rehabilitation Act requires that entity provide disabled individual with "meaningful access" to the benefit or service offered); Harris, 478 F. Supp. 2d at 548 (noting that even if properly brought, claim that licensing board violated Rehabilitation Act by denying plaintiff's request to read from a prepared statement at the hearing would be dismissed because plaintiff did not properly allege how the denial affected the decision not to restore his medical license); Herschaft v. New York Bd. of Elections, 00 CV 2748 (CBA), 2001 U.S. Dist LEXIS 11801, at *15-16 (E.D.N.Y. August 9, 2001) (plaintiff's claims that he needed an additional six weeks, due to fact that he might suffer a breakdown, to gather signatures were too speculative to demonstrate that he was prevented from participating in election).

In effect, plaintiff has essentially failed to allege causation, i.e., that HRC's purported disability discrimination (failure to provide an extension) caused her "loss." She does not allege that HRC's decision not to afford her an extension caused the HRC's decision of no probable cause to go against her, or that the decision would somehow have been different had she been granted a two week extension. Plaintiff instead states that HRC's decision was erroneous because the HRC improperly credited the documents submitted by the NYODN. (Complaint ¶¶ 35-41, 43-48, 752-753). Consequently, plaintiff's ADA and Rehabilitation Act claims also fail because she has failed to allege that her complaint was denied *by reason of* her disability. See Aquino v. Prudential Life and Cas. Ins. Co., 419 F. Supp. 2d 259, 268, 273 (E.D.N.Y. 2005) (an ADA plaintiff must demonstrate that a denial of benefits occurred "because of" the disability); Harris, 478 F. Supp. 2d at 548 (noting that plaintiff's claim should also be

dismissed because plaintiff argued that the licensing board denied his application in part because it took his prior violations into account and not due to his disability).

**POINT VI**

**PLAINTIFF DID NOT TIMELY FILE HER NOTICE OF CLAIM AND OTHERWISE CANNOT ESTABLISH CLAIMS FOR IIED, DEFAMATION, OR FRAUD**

Plaintiff's three state tort law claims should be dismissed because she did not file a timely notice of claim within ninety days after her claims arose.  NEW YORK GEN. MUN. LAW § 50-e (notice of claim must be filed "within ninety days after claim arises").  Plaintiff's allegations for defamation, fraud, and intentional infliction of emotional distress all appear to be based on the HRC's determination and order finding no probable cause, which plaintiff alleges was served on or about May 12, 2006, and on various alleged actions taken before that date.  See Complaint ¶¶ 35, 150-181, 795.  Plaintiff, therefore was required to file her notice of claim on or before August 10, 2006.  As plaintiff did not file her Notice of Claim until January 2, 2007, her state tort law claims should be dismissed.  See id. ¶ 222; Corcoran v. New York Power Auth., 202 F.3d 530, 541 (2d Cir. 1999); Gaston v. New York City Dep't of Health Office of Chief Medical Examiner, 432 F. Supp. 2d 321, 326 (S.D.N.Y. 2006).

**A. Plaintiff has failed to state a claim for defamation**

Plaintiff's claims for defamation against the HRC Defendants fail because all of the alleged defamatory statements are protected by New York's absolute privilege for statements made in the course of judicial proceedings.  HRC's allegedly defamatory  statements consists of its determination and order finding no probable cause.  As this document consists entirely of statements concerning the positions and arguments of the parties to the HRC proceeding regarding plaintiff's claims, as well as the HRC's reasoning for its finding of no probable cause,

20

the statements contained therein fall within the privilege extended to statements made in the course of judicial or quasi-judicial proceedings. See Determination and Order after Remand dated May 8, 2006 (a true and correct copy of the Determination and Order is annexed hereto as Exhibit A). It is well-settled that statements made in the course of judicial or quasi-judicial proceedings are protected by an absolute privilege. Rosenberg v. Met Life, 9 N.Y.3d 359, 365 (2007) (holding that the absolute privilege applies to allegedly defamatory statements made on a form submitted as part of proceedings before NASD investigations of suspected violations of SEC laws); Missick v. Big V Supermarkets, 495 N.Y.S.2d 994, 997 (3d Dep't 1985) (applying privilege to statements made during course of proceedings before the state human rights division); see also N.Y. CIV. RIGHTS LAW § 74.

Secondly, under New York law, statements made by public officials in the course of their official duties are absolutely privileged. The absolute privilege "is a complete bar to [an] action in libel, regardless of whether the publication was motivated by malice or that the matter so published was false and defamatory." Sheridan v. Crisona, 14 N.Y.2d 108, 114 (1964); see also Clark v. McGee, 49 N.Y.2d 613, 617 (1980); Conway v. Avidon, Index No. 2581/2001, 2001 NY Slip Op 40255U, 2001 N.Y. Misc. LEXIS 1172 (Sup. Ct. Kings County, August 9, 2001) (dismissing claim for slander against respondent State Division on Human Rights because division employees were acting within their official capacities in investigating claims and issuing determination of no probable cause). As the determination and order which forms the basis of plaintiff's defamation claim was issued by HRC in the course of HRC's efforts to adjudicate plaintiff's claims of discrimination, the statements contained therein are protected by an absolute privilege.

Even if these privileges did not apply to the present circumstances, plaintiff's defamation claim against the HRC Defendants would still fail to state a claim because plaintiff has failed to plead the requisite elements of the claim. Nowhere in plaintiff's lengthy complaint does she allege the specific statements claimed to be defamatory. As such her defamation claim should be dismissed. See Reid v. City of New York, 00 Civ. 5164 (RCC) (JCF), 2001 U.S. Dist LEXIS 13789, at *20-21 (S.D.N.Y. 2001) (dismissing defamation claim where plaintiff failed to identify the specific statements claimed to be defamatory); Dillon v. City of New York, 704 N.Y.S.2d 1, 6 (1st Dep't 1999) (elements of a claim for defamation are a false statement, published without privilege or authorization to a third party, constituting fault under at least a negligence standard, and it must either cause special harm or constitute defamation per se). Furthermore, plaintiff does not attribute any specific allegedly defamatory statements to any of the HRC Defendants in order to satisfy the publication requirement of the tort of defamation.

## B.  Plaintiff cannot establish claim for IIED

Best-Simpson's claim for intentional infliction of emotional distress should be dismissed as improperly brought because, as just discussed, she has also brought a claim for defamation based on the same conduct that she alleges caused her emotional distress. As a matter of law, New York courts do not permit plaintiffs to bring claims for intentional infliction of emotional distress based on the same conduct on which they have instituted a claim for defamation. See Herlihy v. Metropolitan Museum of Modern Art, 214 A.D.2d 250, 263 (1st Dep't 1995) (noting that claim for IIED must fail when the conduct complained of falls within "the ambit of other traditional tort liability" such as defamation); EEOC v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 473 (S.D.N.Y. 1999) (dismissing claims for IIED based on allegations that were essentially for defamatory conduct). Because the conduct that provided the

basis for Best-Simpson's cause of action for IIED, the HRC's decision finding no probable cause also underlies her claims for defamation, her claim for IIED should be dismissed.

Furthermore, any statements alleged to have been made by the HRC Defendants and to have caused plaintiff emotional distress are protected by privilege. "[A] plaintiffs claim for IIED cannot arise out of statements made during a judicial or quasi-judicial proceeding where those statements are 'material and pertinent to the questions involved in the proceedings.'" Taggart v. Moody's Investors Service, 06 Civ. 3388 (PKC), 2007 U.S. Dist LEXIS 52765, at *18 (S.D.N.Y. 2007) (citing Rosenberg v. Met Life, 9 N.Y.3d 359 (2007)). As any statements contained in the determination and order of HRC, which plaintiff alleges caused her emotional distress, were made during the course of quasi-judicial proceedings before HRC, they are protected by privilege. See id. (statements made during the course of a New York State Division on Human Rights investigation or proceeding cannot serve as the basis for an IIED claim).

Plaintiff's claim for IIED should also be dismissed because claims for IIED against governmental bodies are barred by public policy. Dillon v. City of New York, 704 N.Y.S.2d 1, 14 (1st Dep't 1999).

Finally, even if properly brought, the allegations in the plaintiff's complaint do not suffice to state a claim for IIED. The tort of intentional infliction of emotional distress has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at

122 (internal citations omitted). Plaintiff's entire IIED claim appears to rest on the fact that the HRC issued a determination and order finding that there was no probable cause to believe that she was discriminated against by her employer. The mere fact that HRC issued a ruling adverse to plaintiff's claims does not come close to the level of outrageousness envisioned by New York courts in order to sustain a claim for IIED. Her IIED claim should be dismissed.

### C. Plaintiff has failed to state a claim for fraud

The elements of a claim for fraud are: (1) misrepresentation or a material omission of fact which was false and known to be false by the defendant; (2) that the misrepresentation was made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury. Peach Parking Corp. v. 346 West 40th Street, LLC, 835 N.Y.S.2d 172 (1st Dep't 2007). Plaintiff's claim for fraud as against all the HRC Defendants should be dismissed as she fails to allege the requisite elements of fraud. Nowhere in her complaint does she allege that any of the HRC Defendants made a misrepresentation or a material omission of fact or that she justifiably relied upon any alleged misrepresentations by the HRC Defendants.

Plaintiff's claim for fraud also fails to state a claim as it is insufficiently pled. Pursuant to Fed. R. Civ. P. 9(b), "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As a consequence, the pleader must set forth the fraudulent statement, the time, the place, speaker and content of the alleged misrepresentations as well as plead facts giving rise to a strong inference that the defendant had the requisite fraudulent intent. Herlihy v. City of New York, 00 CV 407 (SJ)(RML), 2007 U.S. Dist. LEXIS 29231, at *7 (S.D.N.Y. 2007) (citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986) and Quaknine v. Macfarlane, 897 F.2d 75, 80 (2d Cir. 1990)). In her complaint, plaintiff

makes the sweeping allegation that "defendants committed fraud," but she does not plead which defendants' statements were misrepresentations, what facts were misrepresented, or the time and place where any alleged statements were made, nor does she allege facts raising an inference that any of the HRC Defendants intended to defraud her.    Given the heightened pleading requirements of Fed. R. Civ. Pro. 9, plaintiff's allegation of fraud cannot suffice to state a claim. See Jones v. Nat'l Communication and Surveillance Networks, 409 F. Supp. 2d 456, 465 (S.D.N.Y. 2006) (dismissing fraud claim under Rule 9 for failing to allege when, where and how defendants made misrepresentations and why the plaintiff believed the representations to be fraudulent).

## CONCLUSION

For the above reasons, the HRC Defendants respectfully request that this Court dismiss all claims brought against the HRC Defendants, and grant such other and further relief as this Court deems just and proper.

Dated:        New York, New York
              November 27, 2007


                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 20-102
                              New York, New York 10007
                              (212) 788-1006


              By:    _____
                     Eric Proshansky   (EP1777)
                     William H. Miller (WM4658)
                     Assistant Corporation Counsel