Exhibit A

DETERMINATION AND ORDER AFTER REMAND

CITY OF NEW YORK
COMMISSION ON HUMAN RIGHTS

In the Matter of the Complaint of:

JANE BEST-SIMPSON,

                      Complainant,

         - against -

NEW YORK ORGAN DONOR NETWORK,

                      Respondent.

Complaint No.: M-E-DR-04-1015806-E
Federal Charge No.: 16FA500110

      On April 19, 2005, Jane Best-Simpson ("Complainant") filed a Verified Complaint ("Complaint") with the Commission on Human Rights ("Commission") charging New York Organ Donor Network ("Respondent") with unlawful discriminatory practices in violation of the Administrative Code of the City of New York.

Respondent denied the allegations of discrimination.

      After investigation, the Commission has determined that there is NO PROBABLE CAUSE to believe that the Respondent engaged in the unlawful discriminatory practices alleged in the Complaint.

      By Notice of Administrative Closure ("Notice"), dated May 3, 2005, the Commission's Law Enforcement Bureau ("Bureau") closed the Complaint pursuant to Code Section 8-113 (c), on the ground that the Complaint was time-barred. Complainant appealed the Notice on or about June 2, 2005.

      Upon further examination, the Bureau requested that the Commissioner remand the Complaint to it for investigation. The Commissioner did so by Determination and Order After Review dated August 9, 2005. After investigation, the Commission has determined that there is No Probable Cause to credit Complainant's allegations of discrimination.

## The Complaint

      Complainant alleges that she is black, and is disabled by attention deficit/hyperactivity disorder, chronic fatigue syndrome, and anxiety disorder. She alleges that Respondent denied her a reasonable accommodation of her disabilities, subjected her to different terms and conditions of

employment, and ultimately terminated her employment because of her race, color, and disabilities.*

Respondent maintained that it reasonably accommodated Complainant's disabilities, that it did not subject her to discrimination in the terms, conditions, and privileges of her employment, and that it terminated her employment due to poor job performance, inappropriate and unprofessional behavior, and excessive absenteeism and lateness.

**The Parties**

Respondent employed Complainant as a Community Relations Specialist. Michelle Lucas was Director of Human Resources for Respondent. Julia Rivera was Director of Communications for Respondent and was Complainant's immediate supervisor.

**The Facts**

Respondent hired Complainant in or around late September 2003, as a Community Relations Specialist. Ms. Lucas and Ms. Rivera participated in the hiring decision. Almost immediately upon commencing her employment, Complainant engaged in a pattern of excessive tardinesses. Respondent provided a chart showing Complainant's absences and latenesses. Throughout the seven-month period of her employment with Respondent, Complainant had approximately 38 latenesses. The latenesses varied from fifteen minutes to four hours.

In December 2003, Complainant informed Ms. Rivera of her alleged disabilities, and requested that Ms. Rivera permit her to work from home, and come to Respondent's offices on an as-needed basis. Complainant provided no medical documentation of her claimed disabilities until March 8, 2004. Respondent denied this request, but permitted Complainant to work from 10:00 AM to 6:00 PM. In early March 2004, Respondent further adjusted Complainant's work schedule to 10:30 AM to 6:30 PM. Nonetheless, Complainant was late eight times subsequent to the second adjustment of her work schedule. These latenesses varied from fifteen minutes to one hour. In addition, Complainant had six absences from January 2004, through mid-April 2004.

Throughout her employment with Respondent, Complainant engaged in inappropriate and confrontational behavior in relation to her co-workers. Her behavior included remaining on Respondent's premises after 9:00 PM and making telephone calls, both business and personal, lasting up to two hours. On one occasion, Complainant telephoned an intern at 11:00 PM.

---

*The Verified Complaint attributes Respondent's decision to terminate Complainant's employment to her race only. However, the Commission will address whether Complainant's disabilities played a role in Respondent's termination decision.

2

Complainant's confrontational behavior included engaging several co-workers in arguments. In one instance, following an argument with a particular co-worker, Martin Wolf, Complainant told Respondent she would not return to work unless it referred Wolf for psychiatric counseling. In another instance, Complainant accused a member of Respondent's MIS staff of accessing personal documents in her computer.

Respondent repeatedly counseled Complainant about both her excessive absenteeism and tardiness, and her behavior. As Complainant's performance did not improve, Respondent terminated her employment on or about April 19, 2004. In its letter of termination, Respondent cited the above-described performance difficulties as the reasons for its decision.

**Reasonable Accommodation**

The Commission finds that Respondent reasonably accommodated Complainant's purported disabilities by allowing her to work on a later schedule than did its other employees. According to Complainant's job description, one of the essential functions of her job was to give presentations "to top management, public groups and/or boards of directors." Performing this function required that Complainant be present at Respondent's offices, or at locations at which she was to give her presentations, during standard business hours. Respondent did not permit any of its employees to work from home.

It is noteworthy that Respondent made the first modification of Complainant's work schedule without insisting upon medical documentation of her need for it. Since interaction with co-workers, managers, and community and business leaders was an essential function of Complainant's job, any further modification of her work schedule would have imposed an undue hardship upon Respondent, and would have fundamentally altered the nature of its business.

The Commission further notes that an employer is not required to provide the precise accommodation which an employee with a disability requests. Rather, the Americans with Disabilities Act and the New York City Human Rights Law require that an employer engage the employee requesting the accommodation in an interactive dialogue to determine what alternative accommodations would meet the needs of both parties. In suggesting the alternative that Complainant work a later schedule, an accommodation it granted twice, Respondent engaged in such dialogue. Given the impact which Complainant's requested accommodation would have had upon Respondent's business, it cannot be required to do more.

Complainant asserts that Ms. Rivera inappropriately discussed her disabilities with other employees of Respondent. Since Respondent twice changed Complainant's work schedule to accommodate her purported disabilities, it had to provide some explanation of the need for the modification to those employees whom the change affected. Complainant provided no evidence that Ms. Rivera violated her privacy by discussing her purported disabilities in greater detail than was appropriate, and/or with persons who were not affected by the modifications of Complainant's work schedule.

**Different Treatment**

Complainant alleges that Respondent treated her differently from non-black employees. Specifically, she asserts that Respondent failed to give her a job description, failed to permit her to attend orientation sessions when she began her employment, excluded her from staff meetings, and failed to give her a performance evaluation at the conclusion of the first three months of her employment.

Both Respondent and Complainant provided a job description. Respondent asserts, and Complainant does not dispute, that Ms. Rivera, Complainant's immediate supervisor, reviewed the job description with Complainant, made revisions based on that review, and worked with Complainant in the preparation of a plan of action for performance of her job responsibilities.

Respondent apparently postponed Complainant's attendance at its orientation sessions for Respondent's new employees because it needed her assistance in meeting a deadline. However, Respondent permitted Complainant to attend at least some of the orientation sessions, which she claimed to have missed earlier in her term of employment. Further, Ms. Lucas invited Complainant to see her with any questions she might have.

The Commission found no evidence that Respondent's postponement of Complainant's attendance at some of its orientation sessions bore any relationship to Complainant's race and color. The record demonstrates that Respondent valued Complainant's talents and abilities and had high expectations for her contributions to its mission. Respondent's efforts to accommodate her purported scheduling needs amply support this fact. In this context, it is illogical that Respondent would deliberately attempt to thwart Complainant's ability to acquire knowledge necessary to the optimum performance of her job.

As to staff meetings, Respondent asserts that it held general staff meetings to which it invited all employees, as well as regularly occurring departmental staff meetings, to which it invited all employees of the particular department. Respondent convened other specific meetings to which only employees whose presence was necessary based on the subject matter of the meeting and each employee's job responsibilities were invited. Complainant failed to identify any internal meeting from which she believes Respondent inappropriately excluded her.

Finally, Respondent asserts that it does not conduct performance evaluations of any employee at the conclusion of his/her first three months of employment. Complainant has failed to identify any non-black employee who received a three-month evaluation. Ms. Rivera worked closely with Complainant throughout her period of employment, both in developing her job responsibilities and her plan of action for meeting her goals, and in providing Complainant with feedback as to her job performance. Accordingly, even if Respondent gave other employees three-month performance evaluations, its failure to give Complainant such an evaluation would not support a finding of discrimination.

## Termination of Employment

Respondent demonstrated that it terminated Complainant's employment for legitimate, nondiscriminatory reasons – her chronic absences and tardiness, and her inappropriate and confrontational behavior. Neither Complainant's race and color nor her purported disabilities played any role in its decision.

Respondent was aware of Complainant's race and color when it hired her. In fact, there is evidence that it viewed these characteristics as factors in Complainant's favor because it envisioned her job duties to include educating the minority community concerning Respondent's mission. Ms. Rivera and Ms. Lucas participated in both the hiring decision and the decision to terminate Complainant's employment. Accordingly, the "same actor" inference creates a rebutable presumption that a protected status of which Respondent was aware at the time of Complainant's hire would not have played a role in a subsequent adverse employment action. The Commission has not found any evidence to rebut that presumption.

As to Complainant's purported disabilities, Ms. Rivera first learned of them in or around December 2003 when Complainant requested a modification of her work schedule. While not granting the accommodation that Complainant requested, Respondent twice modified her work schedule to permit her to report to work later than its other employees did. Respondent's conduct is inconsistent with any alleged discriminatory animus based on Complainant's purported disabilities. Further, Respondent terminated Complainant's employment four months after learning of her purported disabilities, and only after many attempts to accommodate Complainant's asserted needs, and to work with her in improving her job performance.

## Conclusion

Respondent hired Complainant with high expectations as to her potential contributions to its mission. Respondent worked closely with her to develop her job responsibilities and to create a plan of action for fulfilling those responsibilities. Respondent gave Complainant numerous opportunities to improve job performance, attendance, punctuality, and attitude. When Complainant informed Respondent of her purported scheduling needs it made every reasonable effort to accommodate her notwithstanding the impact which such accommodation had on it's business. Respondent terminated Complainant's employment only after numerous attempts to work with her to improve obvious performance problems. The record is lacking any evidence of discriminatory animus based on race, color, or disability.

Upon the foregoing, the complaint is ordered dismissed.

Complainant may apply for a review of this order by filing a request in writing for such review within thirty days after the date of the mailing of this order. The application should be addressed to the General Counsel of the New York City Commission on Human Rights, 40

Rector Street, 10th Floor, New York, New York 10006. Please state the reasons for applying for review.

DATED: New York, New York
May 8, 2006

COMMISSION ON HUMAN RIGHTS

BY: _____
Lanny R. Alexander
Managing Attorney
Law Enforcement Bureau

NOTICE TO:

Ms. Jane Best-Simpson
430 Clinton Avenue, Apt. 6D
Brooklyn, New York 11238

Robert I. Gosseen, Esq.
Gallagher Gosseen Faller & Crowley
101 Franklin Avenue, Suite 400
Garden City, New York 11530-2927